IN RE APPLICATION OF GOODSTEIN.

[Cite as *In re Application of Goodstein,* **137 Ohio St.3d 461, 2013-Ohio-4586.**]

*Attorneys—Character and fitness—Overpayment of unemployment-compensation benefits—Application to register as a candidate for admission to the bar disapproved—Reapplication permitted after conditions satisfied.*

(No. 2013-0402—Submitted May 8, 2013—Decided October 23, 2013.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 541.

_____

**Per Curiam.**

{¶ 1} Daniel Robert Goodstein of Ada, Ohio, was expected to graduate from the Ohio Northern University Pettit College of Law in May 2013. He has applied as a candidate for admission but has not applied to take the bar exam.

{¶ 2} Two members of the Hardin County Bar Association's admissions committee interviewed Goodstein. Although one of the interviewers noted that Goodstein had revealed a "situation" regarding the overpayment of unemployment benefits that he was working to repay, the committee recommended that his character, fitness, and moral qualifications be approved.

{¶ 3} The Board of Commissioners on Character and Fitness exercised its authority to sua sponte investigate Goodstein's character. *See* Gov.Bar R. I(10)(B)(2)(e). After conducting a hearing, a panel of the board issued a report expressing several concerns about Goodstein's character including (1) an administrative determination by the Ohio Department of Job and Family Services ("ODJFS") that the agency had overpaid him unemployment-compensation benefits and that the overpayment was due in part to fraud, (2) his failure to disclose his unemployment-compensation fraud on his original application, (3) his

failure to disclose that he had been subject to discipline as an undergraduate at Xavier University for incidents involving alcohol, (4) his failure to disclose a speeding ticket, and (5) inaccuracies in the reporting of his employment history.

{¶ 4} The panel recommended that Goodstein's pending application be disapproved, that he be required to fully reimburse ODJFS for the unemployment-compensation overpayment, plus interest, before reapplying as a candidate for admission to the Ohio bar, and that he be permitted to apply to take the July 2014 bar exam. The board adopted the panel's findings of fact and recommendation of disapproval but recommends that Goodstein be permitted to apply to take the February 2015 bar examination provided that he has made restitution to ODJFS. The board further recommends that we require Goodstein, upon his reapplying as a candidate for admission, to undergo a complete character and fitness investigation. Having thoroughly reviewed the record, we adopt the board's findings of fact and conclusions of law. Rather than permitting him to apply for the February 2015 bar exam, however, we will permit him to apply for the July 2015 bar exam.

## The Underlying Improprieties
### *Unemployment-Benefits Fraud*

{¶ 5} The panel found that in February 2012, Goodstein sent the National Conference of Bar Examiners ("NCBE") an amendment to his application updating his response to one of the questions, but he did not submit the amendment to the Office of Bar Admissions. The amendment reflected that he had collected unemployment benefits after being "laid-off" from his employment as a sales representative for Total Quality Logistics[1] but that ODJFS had later determined that a portion of those benefits had been overpaid due to fraud. Goodstein reported in the amendment that ODJFS had determined that he

---

1. He did not initially disclose this employment on his application to register as a candidate for admission to the practice of law.

became ineligible to receive unemployment benefits when he accepted a new job through an employment agency and then quit that job without providing notice to the employment agency. He explained that he had quit the new job because he could not afford the commute for the three weeks before he would have received his first paycheck.

{¶ 6} Goodstein further stated in the amendment that by the time he learned that ODJFS expected him to repay a portion of the benefits that he had received, he had found work as a part-time janitor and that with the payments he received from unemployment and the work, he "was barely able to make [his] monthly rent and utilities payments." The panel initially believed that this statement indicated that Goodstein had been reporting his earnings to ODJFS and had been receiving a reduced unemployment benefit. At the hearing, however, Goodstein provided two ODJFS Determinations on Eligibility for Unemployment Benefits issued on April 28, 2010, and a later issued Director's Redetermination of another determination that had been issued on that date, that proved otherwise.

{¶ 7} One ODJFS determination disallowed Goodstein's claim for certain benefits on the finding that he had failed to report earnings from SMX Staffing (for the job that he had quit) for the period of September 6, 2009, through September 12, 2009, with the intent to obtain benefits to which he was not entitled. Goodstein appealed another determination regarding that job that had also gone against him, and the director of ODJFS issued a modified redetermination that was substantially similar to the appealed determination, characterizing the payment of benefits for the week that included Goodstein's voluntary termination of his employment as fraudulent because he had quit without just cause, while characterizing his claims for the ensuing period for the weeks of September 19, 2009, through December 26, 2009, as denied, but not fraudulent. Therefore, the director ordered Goodstein to repay 16 weeks of benefits at $198 per week, a total of $3,168.

**{¶ 8}** A different ODJFS determination found that Goodstein had not reported his earnings from the Jewish Community Center for the period of January 03, 2010, through April 24, 2010, and that he had withheld that information with the intent of obtaining benefits to which he was not entitled. This determination declared that his collection of those benefits was fraudulent and ordered him to repay the $3,168 in benefits that he had received for that 16-week period.

**{¶ 9}** While Goodstein sought to characterize his unemployment-benefits fraud solely as a misunderstanding about his eligibility following his voluntary termination of short-term employment, the panel expressed concern that he failed to acknowledge his "larger" fraud—falsely answering questions about his employment and income every week from at least January through May 2010 in order to collect unemployment benefits while he was gainfully employed—until he was cross-examined at the hearing. The panel was particularly troubled that Goldstein had disclosed the true nature of his "problem with ODJFS" to a law-school classmate, who testified at the hearing that Goodstein "had drawn unemployment while also having a job," yet had attempted to conceal it during the admissions process.

**{¶ 10}** Goodstein paid $1,000 to ODJFS on July 14, 2010, and made two small payments totaling $43 on March 11, 2011. In September 2012, he told the admissions-committee interviewers that he was working hard to establish a repayment plan, but he made only two additional payments of $50 after that interview—one on November 30, 2012, and the other on January 4, 2013. At the time of that last payment, his outstanding balance, with accrued interest, was $6,705.04. Although Goodstein initially claimed that his ODJFS case manager had advised him that he could not make partial payments on his account because the overpayments had been fraudulently obtained, he conceded on cross-examination at the hearing that R.C. 4141.35 and an authoritative resource

explaining repayment procedures appear to contemplate that repayment plans are acceptable, even in cases of fraud. And although Goodstein testified that he had an oral understanding with special counsel for the attorney general's office that he would make payments of $50 per month until he passed the bar exam and would increase his payments thereafter, he presented no documentary evidence to support this claim.

{¶ 11} The panel noted that significant material inconsistencies became apparent when comparing Goodstein's application, his testimony, and the evidence presented at the hearing with regard to his employment history. While the amendment Goodstein submitted to the NCBE stated that his employment through the employment agency began on September 8, 2009, and ended on September 11, 2009, he testified at the hearing that he worked for only one day. The employment agency, however, reported that he worked for the company from September 9, 2009, through September 16, 2009. And while Goodstein testified that he obtained a job as a janitor at the Jewish Community Center in October or November 2009, the application submitted to this court states, and the employer confirmed, that he started working there as a "manager" in January 2010.

{¶ 12} After the hearing, Goodstein filed a motion to correct his testimony to conform it to the documentary record, asserting that he had been confused about the date that he began working at the Jewish Community Center, and seeking to establish that the employment commenced in January 2010 as reported by the employer. The panel denied the motion, noting that the employer was asked only to confirm Goodstein's employment as a manager, not as a janitor—the position that he testified he accepted in November 2009—and that regardless of when the employment commenced, the record clearly established that he fraudulently collected unemployment benefits while employed until May 2010.

*Underage Consumption of Alcohol at Xavier University*

{¶ 13} On his application, Goodstein answered "No" to Question 5A, which asked whether he had ever been subject to any disciplinary action at any educational institution. Xavier University reported to the NCBE that he had been disciplined for a November 2004 incident involving a keg party and that he had completed all sanctions imposed. At the hearing, Goodstein offered a letter from the Office of Residence Life at Xavier University detailing not one, but two separate incidents involving the underage consumption of alcohol. The sanction for the first offense, which occurred in September 2004, was five hours of community service, which he completed in October 2004. For his second offense, which occurred in November 2004, he wrote a paper about his experience consuming alcohol.

{¶ 14} Goodstein testified that he had forgotten about these incidents until Xavier reported one of them to the NCBE and that he felt that they were residence-life issues separate from his academic record. The panel did not find his testimony to be credible in light of his brother-in-law's testimony that Goodstein first told him about the incidents in early 2012, which coincided with the timing of Goodstein's application to register as a candidate for admission to the practice of law.

*Failure to Disclose Traffic Citation*

{¶ 15} The panel noted that Goodstein properly disclosed two traffic citations on his application but that he failed to disclose a third. While acknowledging that under ordinary circumstances such an omission would not be a cause for concern, the panel noted that in this case it was one of many misstatements and omissions, demonstrating, at a minimum, Goodstein's inattention to detail.

**Recommendation**

{¶ 16} Citing Goodstein's numerous omissions and attempts to obfuscate the truth by concealing or minimizing the seriousness of his past misconduct throughout the admissions process, the panel recommended that his pending application be disapproved and that he be permitted to apply to take the July 2014 bar examination, provided that he first satisfies his full obligation to ODJFS ($6,705.04 plus interest) and completes a new application to register as a candidate for admission to the practice of law and a bar-exam application.

{¶ 17} The board adopted the panel's findings of fact and recommendation that Goodstein's pending application be disapproved. However, the board recommended that he not be permitted to apply for the bar exam until February 2015, provided that he fully satisfies his financial obligation to ODJFS before submitting a new application to register as a candidate for admission to the practice of law and an application to take the bar exam.

**Disposition**

{¶ 18} We adopt the findings of fact and conclusions of law of the board. Pursuant to Gov.Bar R. I(11)(D)(1), "[t]he applicant has the burden to prove by clear and convincing evidence that the applicant possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." Gov.Bar R. I(11)(D)(3).

{¶ 19} In determining whether the record demonstrates such a deficiency, we consider a number of factors, including but not limited to an applicant's failure to provide complete and accurate information concerning the applicant's past; false statements, including omissions; and acts involving dishonesty, fraud, deceit, or misrepresentation. Gov.Bar R. I(11)(D)(3)(g), (h), and (i).

**{¶ 20}** The evidence demonstrates that in the year before he entered law school, Goodstein obtained unemployment benefits by making false representations about his employment status and earnings for a period of at least 17 weeks. Throughout these admissions proceedings, however, he attempted to characterize the overpayment of more than $6,000 in unemployment benefits as entirely the result of a misunderstanding about his eligibility for the benefits. In light of these acts, involving significant and repeated instances of dishonesty, fraud, deceit, or misrepresentation, and Goodstein's failure to fully disclose other unfavorable, but arguably less serious, information about his past, we agree that he has failed to demonstrate his character, fitness, and moral qualifications to practice law in Ohio.

**{¶ 21}** Accordingly, we disapprove Goodstein's application to register as a candidate for admission to the practice of law. Provided that he first satisfies his full obligation to ODFJS of $6,705.04 plus interest accruing thereon, he may, however, reapply for admission to the practice of law by filing an entirely new application to register as a candidate and undergoing a new character and fitness evaluation, and he may apply to take the July 2015 bar exam.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Bruce Comly French, for applicant.

Gregory A. Grimslid, for the Hardin County Bar Association.

_____